731 So.2d 1067 (1999)
D.I. DUPREE, et al., Plaintiff-Appellant
v.
OIL, GAS & OTHER MINERALS, Defendant-Appellee.
No. 31,869-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1999.
*1068 Bethard & Bethard by James G. Bethard, Coushatta, Counsel for Plaintiff-Appellant.
Leon Rudloff, New Orleans, Counsel for Defendants-Appellees.
Hayden, Moore and Ryan by G. Scott Moore, Monroe, Counsel for the Watzek Family, Defendants-Appellees.
Watson, Murchison, Crews, Arthur & Corkern by Daniel T. Murchison, Sr., Jason Methvin, Natchitoches, Counsel for Rosemary Burns Upshaw, DefendantAppellee.
Before PEATROSS, KOSTELKA and DREW, JJ.
DREW, J.
The sole issue before the court in this matter is whether mineral servitude owners who executed mineral leases are liable to the surface owners for damages to the surface caused by their bankrupt lessee. Finding that La. R.S. 31:22 mandates this obligation, we reverse summary judgment and remand this case to the trial court.

FACTS
D.I. Dupree and Michael Simpson ("Landowners") own a tract of land consisting of 1,724 acres in Natchitoches and Red River Parishes. The land, purchased on September 30, 1985, was burdened by the reservation of a mineral servitude covering 13/16 of the minerals. At the time this lawsuit was filed, the landowners owned the remaining 3/16 mineral interest. They apparently later acquired a 1/16 mineral interest from Jack Williams. The J.H. Williams # 1 Well ("Williams Well") is located on the tract of land.
On August 17, 1994, the landowners filed a petition for declaratory judgment against Oil, Gas and Other Materials, Inc. ("OGOM"). The landowners alleged in their petition that OGOM executed five separate mineral leases on their land in June and July 1994, and that OGOM was attempting to re-enter the Williams Well and conduct operations pursuant to these leases. The landowners further alleged that the Williams Well reverted to them as surface owners due to the well's abandonment by its former owners and operators, so therefore, OGOM has no right to reenter the well. The landowners prayed for judgment declaring that the Williams Well belongs to them, that OGOM does not have the right to re-enter the property or perform any operations on the well, and in the event OGOM conducts operations on the Williams Well, these operations benefit only the landowners. OGOM filed for bankruptcy on August 25, 1995.
On September 13, 1994, OGOM filed the dilatory exception of nonjoinder of necessary parties and the peremptory exception of nonjoinder of indispensable parties[1] because the lessors were not named as defendants in the original petition. The landowners amended their petition on February 16, 1995, to add as defendants, Fred Betz, Jr., Isabella McDonald Betz, Florence Fusilier Mary, Alma Little, Rosemary Burns Upshaw Anderson, Allison Roane Upshaw, Ainsley Scott Upshaw Lewis, John Watzek, Cheryl Nutt Watzek, the Watzek Family Partnership, Jack Williams and Shelby Jean Clay a.k.a. Shelby Jean Partain Williams, hereafter collectively referred to as "lessors" or "servitude owners." *1069 The original petition was amended to further allege that OGOM, the servitude owners, their agents, employees and assigns had entered upon the landowners' property and conducted operations resulting in damages to the landowners' cotton crop, land, roads and culverts. The petition was also amended to allege that the defendants used water from a well located on the property without the landowners' permission.
Fred Betz, Isabella Betz, Alma Little and Florence Mary together filed exceptions of no cause of action and no right of action on September 25, 1995. The exceptions were overruled on November 22, 1995. These same four servitude owners filed a motion for summary judgment on November 28, 1995.
The landowners filed a motion to dismiss OGOM on June 24, 1996. A motion to dismiss Jack Williams was filed by the landowners on September 25, 1996. The landowners state in their brief that Williams conveyed to them his 1/16 mineral interest after this lawsuit was filed.
Cheryl Watzek Wollerson, individually and as managing partner of the Watzek Family Partnership, filed a motion for summary judgment on February 6, 1998. Rosemary Anderson, Allison Upshaw and Ainsley Lewis together filed exceptions of no right of action and no cause of action on March 5, 1998, and a motion for summary judgment on April 3, 1998.
A copy of the Watzek Family Partnership-OGOM lease is attached to the Watzek Family Partnership's motion for summary judgment. According to appellee's brief, the lease used by OGOM is "a standard oil and gas lease that is used extensively industry-wide." Therefore, we will assume the provisions of all the leases executed by the servitude owners are exactly the same as the provisions in the lease attached to the motion for summary judgment. The landowners never entered into any lease agreement with OGOM.
A judgment sustaining the motions for summary judgment and dismissing the landowners' action was signed on April 27, 1998. In its written reasons for judgment, the trial court concluded that as a matter of law, the servitude owners cannot be held liable for surface damages caused by their lessee because once the servitude owners executed the lease, only OGOM had the right of exploration on the property. The landowners now appeal the trial court's judgment. They argue that the servitude owners are responsible for damages caused by OGOM because OGOM was acting on behalf of the lessors.
The servitude owners contend that the duty to restore the land to its previous condition is placed on the entity who actually exercised the right to go on the land to explore and produce minerals. Thus, they argue that when OGOM leased this right from the them, OGOM assumed the responsibility to comply with this duty. The servitude owners have answered this appeal seeking attorney fees for what they characterize as frivolous litigation by the landowners.

DISCUSSION
A landowner may convey, reserve or lease his right to explore and develop his land for the production of minerals and to reduce them to possession. La. R.S. 31:15. The basic mineral rights that can be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. La. R.S. 31:16. The landowners purchased the tract of land subject to a mineral servitude.
A mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership. La. R.S. 31:21. A mineral lease, like a mineral servitude, "conveys rights to explore and develop, to produce minerals, to reduce them to possession, and to assert title to a specified portion of the production." See Comment to La. R.S. 31:16.
*1070 The owner of land burdened by a mineral right or rights and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other. La. R.S. 31:11. The intent of this article is to provide a formula for governing the relationship between the mineral servitude owner and the owner of the servient estate. See Comment to La. R.S. 31:11.
La. R.S. 31:22 sets forth rights and obligations of the mineral servitude owner. This article provides:
The owner of a mineral servitude is under no obligation to exercise it. If he does, he is entitled to use only so much of the land as is reasonably necessary to conduct his operations. He is obligated, insofar as practicable, to restore the surface to its original condition at the earliest reasonable time.
This article addresses only the obligation of a mineral servitude owner. There is a parallel obligation for a mineral lessee in La. R.S. 31:122.
The servitude owners granted mineral leases to OGOM. A mineral lease is a contract by which the lessee is granted the right to explore for and produce minerals. La. R.S. 31:114. The obligations of a mineral lessee are set forth in La. R.S. 31:122, which provides:
A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee.
The Comment to this article states, in part:
[T]here appears no reason whatsoever to exclude [the obligation to restore the surface] as being a specification of the prudent administrator standard. It is established that the mineral lessee must restore the surface even though the lease contract is silent....
The servitude owners contend that the La. R.S. 31:22 obligation is placed on a servitude owner only when the servitude owner or his employees or agents actually conducts the mineral operations, but not when the operations are conducted on their behalf by a lessee. We disagree.
La. R.S. 31:42 states that except in circumstances not applicable to this case, "use of a mineral servitude must be by the owner of the servitude, his representative or employee, or some other person acting on his behalf." Our emphasis. Cf. La. C.C. art. 793 (1870) quoted in official comment to La. R.S. 31:42. Furthermore, La. R.S. 31:43 provides that "[a] person is acting on behalf of the servitude owner only when there is a legal relationship between him and the servitude owner, such as co-ownership or agency, or when there is clear and convincing evidence that he intended to act for the servitude owner." Our emphasis.
When OGOM conducted operations on the leased property, this "use" resulted from the lease of the servitude owners' right to explore for and produce minerals and inured to the benefit of the servitude owners by interrupting prescription. A mineral servitude is extinguished by prescription resulting from nonuse for ten years. La. R.S. 31:27. The prescription of nonuse running against a mineral servitude is interrupted by good faith operations for the discovery and production of minerals. La. R.S. 31:29. As stated in the Comment to La. R.S. 31:42:
The theory of this and the succeeding articles is that what the mineral servitude owner buys is a right to conduct exploratory and mining activities and to retain all or a share of resultant production. It is incumbent upon him to act within the prescriptive period to avoid extinction of his rights. To constitute a use, he or someone acting in his behalf must conduct the operations.

Our Emphasis.
*1071 The servitude owners were well aware that prescription was about to run on their mineral servitude. Clause 22 of "Exhibit A" to the Watzek Family Partnership lease states, "Lessee acknowledges that liberative prescription, unless interrupted, will run in September of 1994 and unless good faith drilling is commenced before the running of same this lease shall terminate with the running of prescription." According to the landowners' original petition, the leases at issue were all signed in June and July of 1994, two to three months before prescription was to run. The operations conducted by OGOM would clearly inure to the benefit of the servitude owners, as these operations would serve to interrupt the running of prescription.
The liability which the landowners now seek to impose on the servitude owners was clearly contemplated in the lease agreements. We note that clause 22 of "Exhibit A" to the Watzek Family Partnership lease reads:
Lessee acknowledges that the surface of the land subject to this lease is not owned by Lessor and Lessee does hereby fully agree to hold Lessor harmless for the cost ... which may arise between Lessee and the owner of the surface of the land whether same is with reference to ... damages for operations conducted pursuant to the provisions of this lease or any other claim made by said landowner[,] ... and Lessee does hereby agree to pay all attorney's fees and other associated costs in connection with such claims which may be or are asserted to be the responsibility of Lessor regardless of the nature or validity of said claims.
If we were to agree with the reasoning employed by the servitude owners, we would allow them to benefit from their lessee's actions in interrupting prescription, while at the same time allowing the servitude owners to forego the responsibility placed upon them under La. R.S. 31:22. OGOM was simply exercising their lessors' rights as servitude owners to explore for and produce minerals. Therefore, we hold that the lessors, as servitude owners, can be held liable to the landowners for damages to the surface caused by their lessee's operations on their behalf. Accordingly, summary judgment was not properly granted.

DECREE
At appellees' cost, the judgment is REVERSED and the matter is REMANDED to the trial court for further proceedings consistent with this opinion.
NOTES
[1] La. C.C.P. arts. 926 and 927 were amended by 1995 La. Acts 662, § 1 to delete the references to necessary and indispensable parties.