MOORE, J.
Lin these consolidated oilfield legacy eases, the plaintiffs, current surface owners, contest judgments that refused to allow them to join the mineral servitude owners as defendants in the first suit and sustained exceptions of lis pendens in favor of the mineral servitude owners in the second suit. For the reasons expressed, we grant the plaintiffs’ writ application, make it peremptory, direct the district court to give the plaintiffs leave of court to amend their petition to join the mineral servitude owners as defendants in the first suit, and remand for further proceedings. Because of this ruling, we dismiss the second suit as moot.

Procedural Background: Suit # 1

These suits are part of an oilfield legacy claim involving a 340-acre tract in the Holly Ridge Oil and Gas Field, Tensas Parish. Plaintiffs Robert and Bonnie Walton bought the tract (surface rights only) in July 2002; they sold it to plaintiffs John and Rebecca Lamm in November 2003. They soon discovered the soil was contaminated by oil and gas exploration and production activities going back several decades, chiefly the storage of oilfield sludge in unlined pits that allowed seepage into groundwater.
In September 2004, the plaintiffs filed Suit # 1[1] against ExxonMobil Oil Corp., Exxon Mobil Corp. and BP America Production Co. (“the oil company defendants,” *618 entities that conducted oil and gas operations on the tract from the late 1930s until 1975), and Monclova Plantation LLC, the entity that sold them the tract. The plaintiffs listed 71 oil wells by serial number, described “pits, sumps, pipelines, flowlines, tank batteries, 12wellheads, and measuring facilities,” and alleged the defendants’ negligence, strict liability, breach of contract to restore the land, and wanton and reckless disregard for public safety. They demanded compensatory damages, remediation, punitive damages, and a reduction in purchase price.
The defendants removed the case to federal court, but after it was remanded to the 6th Judicial District Court, the plaintiffs added as defendants McGowan Working Partners Inc. (“McGowan”), the company that has operated Holly Ridge Field since 1973.
McGowan filed several exceptions, including “no right or cause of action.” The thrust of the argument was that a 1941 mineral lease covering the tract had no provision for the lessee to pay for damages, and a 1948 salt water disposal contract specifically authorized one of Exxon-Mobil’s predecessors to use the land for disposal of saltwater “and other substances”; hence, there was no contract liability on the part of the lessees or operator.
The oil company defendants adopted these arguments,, filing motions for summary judgment. They showed that the mineral rights had been reserved in a 1973 sale, after which the surface rights had been transferred several times; no subsequent sale had any provision for preexisting damages. The thrust of the argument was the “subsequent purchaser doctrine”: the plaintiffs were raising a tort claim, and as to tort claims, a purchaser of property can recover for only those damages that occurred after he acquired the property. LeJeune Bros. Inc. v. Goodrich Petr. Co., 06-1557 (La.App. 3 Cir. 11/28/07), 981 So.2d 23, writ denied, 2008-0298 (La. 14/4/08),a 978 So.2d 327, and jurisprudence dating back to Clark v. Warner & Co., 6 La.Ann. 408 (1851).
The plaintiffs responded, inter alia, that the Mineral Code, La. R.S. 31:11, requires the owner of a mineral right to exercise his rights “with reasonable regard for those” of the surface owner, regardless of contracts and jurisprudential rules.
In early November 2009, the plaintiffs sought leave to file a second supplemental and amending petition to add Cleada N. Butts, et al. (“the Butts defendants”), the current mineral servitude owners, as defendants.
One week later, the district court held a hearing on the exceptions and motions for summary judgment only. The plaintiffs argued that two other circuits had recently rejected the subsequent purchaser doctrine. Marin v. Exxon Mobil Corp., 2008-1724 (La.App. 1 Cir. 9/30/09), 2009 WL 7004332 (unpub.); Eagle Pipe & Supply Co. v. Amerada Hess Corp., 2009-0298 (La.App. 4 Cir. 2/10/10), 47 So.2d 428, 174 Oil & Gas Rep. 19. The defendants countered that LeJeune was still the prevailing law, as another judge of the 6th Judicial District Court had recently rejected an identical oilfield legacy claim in a case called Wagoner v. Chevron. Perhaps because Marin, Eagle Pipe and Wagoner were all on appeal, the district court deferred ruling on the motions for summary judgment, and gave the parties 30 days for additional briefing on the exceptions. To date, however, the court has not ruled on any of these filings.
About a year later, the supreme court rendered an opinion in Marin v. Exxon Mobil Corp., 2009-2368 (La.10/19/10), 48 So.3d 234, reversing the |4award of dam *619 ages on grounds of prescription but expressly reserving (in footnote 18) any analysis of the subsequent purchaser doctrine. Around the same time, this court affirmed (on rehearing) the district court’s application of the subsequent purchaser doctrine in Wagoner v. Chevron USA, 45,507 (La.App. 2 Cir. 8/18/10), 55 So.3d 12, but the property owners in Wagoner applied for writs to the supreme court. The district court therefore held all pending motions in Suit # 1 under advisement.
Procedural Background, Suit # 2
After waiting over a year with no rulings on anything, the plaintiffs filed Suit #2[2] in May 2011. They named only the Butts defendants, the current mineral servitude owners, as defendants. The factual allegations and claims for relief were almost identical to those in Suit # 1. They added, however, the legal theory that under the Mineral Code, R.S. 31:22, the owner of the mineral servitude is obligated, “insofar as practicable, to restore the surface to its original eondition[.]”
The Butts defendants responded with an exception of lis pendens, arguing that the factual allegations and relief sought were identical to Suit # 1, and thus there was merger of the defendants’ identities in both actions. Louisiana Cotton Ass’n v. Tri-Parish Gin Co., 624 So.2d 461 (La.App. 2 Cir.1993).
The court held a hearing in October 2011. The plaintiffs conceded that the “remedy might ultimately be the same,” but argued that the cause of action against the Butts defendants was based on Art. 22’s obligation of the | ¿mineral servitude owner to “restore the surface” while that against the oil company defendants was based on Art. 122’s obligation of the lessee to act as a “reasonably prudent operator,” two distinct legal theories. The district court stated that it was still waiting on guidance from the supreme court in Eagle Pipe, but ruled orally that in both Suit # 1 and Suit # 2, there was an identity of the parties and the claims arose from the same transaction or occurrence; hence, the court sustained the exception of lis pen-dens and dismissed the suit without prejudice. The plaintiffs took this appeal in 47,388-CA.
Subsequent History in Suit # 1
A few weeks later, the supreme court rendered judgment in Eagle Pipe & Supply Inc. v. Amerada Hess Corp., 2010-2267 (La.10/25/11), 79 So.3d 246, 174 Oil & Gas Rep. 32. A plurality of the court reversed the fourth circuit and reinstated the defendants’ exception of no cause of action, stating: “In the absence of an assignment or subrogation * * *, a subsequent purchaser of the property cannot recover from a third party for property damage inflicted prior to the sale.” However, the plurality carefully limited its holding (in footnote 80): “Moreover, because not factually relevant, we express no opinion as to the applicability of our holding to situations involving mineral leases or obligations arising out of the Mineral Code.”
The district court finally held, in February 2012, a hearing on the plaintiffs’ motion to amend their petition in Suit # 1. The plaintiffs argued that once the court sustained the exception of lis pendens in Suit # 2, it should be automatic that they could join the Butts defendants in Suit # 1. |RThe Butts defendants countered that joining them at this late date would be unduly prejudicial; the other defendants urged that under Eagle Pipe and this court’s Wagoner v. Chevron USA, the plaintiffs as subsequent purchasers simply had no cause of action against anybody.
*620 The district court orally adopted the latter argument and denied the motion to amend. The plaintiffs took this writ in 47,428-CW.
About a month later, the supreme court denied writs in Wagoner v. Chevron USA, 2010-2773 (La.3/2/13), 83 So.3d 1032. Although without precedential value, it allowed this court’s application of the subsequent purchaser doctrine, in the context of an oilfield legacy claim, to stand.

The Parties’ Positions

The plaintiffs contest the denial of leave to amend in Suit # 1 and the granting of the exception of lis pendens in Suit # 2. As a foundation, they show that La. R.S. 31:22 obligates the owner of a mineral servitude to “restore the surface to its original condition at the earliest reasonable time.” To prove that Art. 22 is unaffected by the subsequent purchaser doctrine, they cite a case in which the first circuit upheld the Office of Conservation’s creation of a coal seam natural gas unit in LaSalle Parish, Six C Properties LLC v. Welsh, 2010-1913 (La.App. 1 Cir. 5/26/11), 68 So.3d 609, writ granted, 2011-1353 (La.11/14/11), 75 So.2d 440. With the presumptive application of Art. 22, they argue that leave to amend should be freely given, even to add a new theory of recovery. Giron v. Housing Auth. of City of Opelousas, 393 So.2d 1267 (La.1981). They concede that lis pendens would block a second suit “between the same parties in the same 17capacities,” La.C.C.P. art. 531. However, they contend that because the Butts defendants’ obligation arises from Art. 22, and the oil company defendants’ obligation arises from Art. 122, they cannot possibly be in the same capacity.
The Butts defendants respond that whether their duty is framed by Art. 22 or Art. 122, it is “no broader than the duty” of the lessee, McGowan, and thus they are substantially the same party as McGowan. They contend that Six C Properties has nothing to do with oilfield legacy claims, but concede that one of the cases cited therein, Dupree v. Oil, Gas & Other Minerals, 31,869 (La.App. 2 Cir. 5/5/99), 731 So.2d 1067, 142 Oil & Gas Rep. 258, held that servitude owners could be liable to surface owners for surface damages caused by their bankrupt lessee. However, they argue that the defendants in Du-pree had actually conducted operations and that the lease therein had an express restoration and indemnity clause, unlike any lease in this case. Finally, the Butts defendants urge that the grant or denial of leave to amend should be disturbed only on a showing of abuse of discretion, and no abuse is apparent.
The oil company defendants and McGowan cite the concurrence in this court’s writ grant in Suit # 1,[3] arguing that their position is identical to that of the lessees in Wagoner v. Chevron USA, supra, with the result that the plaintiffs have no claim at all. They ask this court to act on the pending exceptions and motions for summary judgment, and end the matter.
|sThe final defendant, Monclova Plantation, asserts that it has absolutely no assets and will not participate in the litigation.

General Principles

The procedural issue in Suit # 1 is leave to amend the petition. Once the answer has been served, the petition may be amended only by leave of court or written consent of the adverse party. La. C.C.P. art..1151. Although leave to amend is within the court’s sound discretion, it *621 should be granted to promote the interests of justice. Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291; Smith v. Jitney Jungle of Amer., 35,100 (La.App. 2 Cir. 12/5/01), 802 So.2d 988, with denied, 2002-0039 (La.3/15/02), 811 So.2d 913. Courts are generally liberal in allowing amendments to the petition, in the absence of a showing of prejudice to the defendant or a finding of bad faith or dilatory purposes on the part of the plaintiff. Giron v. Housing Auth., supra; Taylor v. Babin, 2008-2063 (La.App. 1 Cir. 5/8/09), 13 So.3d 633, writ denied, 2009-1285 (La.9/25/09), 18 So.3d 76.[4]
The procedural issue in Suit # 2 is lis pendens. When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by filing the decli-natory exception of lis pendens. La. C.C.P. arts. 531, 925 A(3). A “fair test” for deciding whether lis pendens should be granted is whether the first suit would be res judicata as to the second suit. State ex rel. Marston v. Marston, 223 La. 1046, 67 So.2d 587 (1953); Jones v. Southern Natural Gas Co., 46,347 (La.App.9 2 Cir. 4/13/11), 63 So.3d 1080, 173 Oil & Gas Rep. 276, writs not cons., 2011-1242 (La.9/23/11, 11/4/11), 70 So.3d 800, 75 So.3d 911. Res judicata is a concept by which the defendant may defeat an action by declaring the claim extinguished because it already has been litigated. La. R.S. 13:4231. Res ju-dicata applies “between the same parties” or between parties who appear in the same capacity in both suits. Id.; Burguieres v. Pollingue, 2002-1385 (La.2/25/03), 843 So.2d 1049; Von Drake v. Rogers, 45,305 (La.App. 2 Cir. 5/19/10), 36 So.3d 1218, writ denied, 2010-1471 (La.10/15/10), 45 So.3d 1111. Res judicata also applies if the cause of action asserted in the second suit existed at the time of judgment in, and arose from the same transaction or occurrence that was the subject of, the first suit. Chevron USA v. State, 2007-2469 (La.9/8/08), 993 So.2d 187; Von Drake v. Rogers, supra. Res judicata does not require an identity of cause. Chevron USA v. State, supra.

Discussion

The issue posed by both matters is whether the Butts defendants, as mineral servitude owners, and the oil company defendants, as lessees, and McGowan, the working interest owner, owe the same duties to the plaintiffs, the surface owners. If so, the oil company defendants and McGowan contend that res judicata would bar the suit against the Butts defendants in Suit # 2 and support the denial of leave to amend in Suit # 1.
The foundational duty of parties in a case of mineral rights is stated in La. R.S. 31:11 A:
§ 11. Correlative rights of landowner and owner of a mineral right and between owners of mineral rights
|10A. The owner of land burdened by a mineral right or rights and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other. Similarly the owners of separate mineral rights in the same land must exercise their respective rights with reasonable regard for the rights of other owners.
This article contemplates concurrent uses of the land by the owner of mineral rights and the owner of the land and those deriving use rights from him. Id., comment. The general duty of “rea *622 sonable regard” under Art. 11 also applies to a mineral lessee. Ashby v. IMC Exploration Co., 496 So.2d 1334 (La.App. 3 Cir.1986), aff'd, 506 So.2d 1193 (1987).
The particular duty of a mineral servitude owner is stated in La. R.S. 31:22:
§ 22. Certain rights and obligations of mineral servitude owner
The owner of a mineral servitude is under no obligation to exercise it. If he does, he is entitled to use only so much of the land as is reasonably necessary to conduct his operations. He is obligated, insofar as practicable, to restore the surface to its original condition at the earliest reasonable time.
The particular duty of a mineral lessee is stated in La. R.S. 31:122:
§ 122. Lessee’s obligation to act as reasonably prudent operator
A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor. Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee.
The distinction is crucial. Although their right is the same, the servitude owner has the duty to restore the surface to its original condition whereas the lessee has the duty to act in good faith and to develop and | n operate the property as a reasonably prudent operator. In Marin, supra, the supreme court held that the “prudent operator standard” of Art. 122 incorporates the “duty to remediate oilfield contamination” if the lessee has operated “unreasonably or excessively.” Id. at 37-38, 48 So.3d at 259-260. The court called this the lessee’s “additional restoration duty to correct the contamination,” and explained that it “does not necessarily mean that the lessee has to duty to restore the land to pre-lease condition,” which would be the servitude owner’s duty under Art. 22. Id. This distinction, though perhaps subtle, reflects the reality that the lessee and mineral servitude owner are not totally in the same position. The court in Marin recognized that current contamination adversely affects the surface owner’s present use of the land and is different from the ordinary wear and tear from ongoing use by a reasonably prudent operator.
We also note that a special statute, La. R.S. 30:29 (also known as “Act 312”), creates a special procedure to resolve claims of environmental damage arising from oilfield operations. Act 312 applies to actions under Title 31, the Mineral Code. M.J. Farms Ltd. v. Exxon Mobil Corp., 2007-2371 (La.7/1/08), 998 So.2d 16. Notably, § 29 C(1) provides that if the finder of fact determines that environmental damage exists and determines the party or parties who cause the damage, then the court shall order those parties “whom the court finds legally responsible for the damage” to develop a plan of remediation. Although the application of Act 312 is not an issue here, it underscores the fact that different defendants — lessees, operators, servitude owners — may have different obligations to evaluate and 112remedy contamination. The interests of justice are not served when a concerned party is excluded from the litigation.[5]
The plaintiffs correctly conceded, at the hearing in Suit # 2, that the remediation *623 owed by all defendants might ultimately be the same. We also agree with the plaintiffs’ claim that the Butts defendants’ obligation to restore the surface at the earliest practicable time is not the same as the other defendants’ duty to act as reasonably prudent operators, including a duty to correct contamination immediately, if the contamination is interfering with the plaintiffs’ use of the surface. On this showing, we find the district court abused its discretion in denying leave of court to amend in Suit # 1. We therefore grant the writ, vacate the ruling, and remand the case to the district court for the grant of leave to amend.
This ruling venders the issue in Suit # 2 moot; when the plaintiffs are allowed to assert their claims against the Butts defendants in Suit # 1, there is no further need for Suit # 1. We therefore dismiss the appeal as moot and express no opinion as to the exception of lis pendens. We also express no opinion on the potentially dispositive issue raised by the oil company defendants and McGowan, whether the subsequent purchaser doctrine extinguishes the plaintiffs’ claims because the contamination occurred before the plaintiffs bought the surface rights. Such a ruling would depend on a factual finding which has not yet occurred. The parties apparently have not pressed the district court to rule on the outstanding exceptions and 11smotions for summary judgment. Only after a ruling on these matters will this court have anything to review.

Conclusion

For the reasons expressed, we grant the plaintiffs’ writ application in Suit # 1, make it peremptory, direct the district court to grant the plaintiffs leave of court to amend their petition to join the mineral servitude owners as defendants in the first suit, and remand for further proceedings. We dismiss as moot the appeal in Suit # 2. All costs are to be paid one-half by the oil company defendants and one-half by McGowan Working Partners Inc.
WRIT GRANTED; CASE #1 REMANDED WITH INSTRUCTIONS. APPEAL IN CASE # 2 DISMISSED.
CARAWAY, J., concurs with written reasons.

. Tensas docket no. 21,407, this court's docket no. 47,428-CW.

. Tensas docket no. 23,083, this court’s docket no. 47,388-CA.

. The author of this opinion concurred in the writ grant, noting "the district court’s failure (or refusal) to rule on the original defendants’ long-pending motions and exceptions; a dis-positive ruling on one of these may well have obviated this application.”

. The plaintiffs have not contended that exclusion of the Butts defendants would result in the "absence of complete relief” and thus justify joinder under La. C.C.P. art. 641.

. According to other filings in these records, the mineral servitude was not created until 1973. If the evidence shows that the environmental damage occurred before that date, the servitude owners could not be liable for tort damage to the land but still liable for surface restoration under R.S. 31:22.