Judgment rendered October 1, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,300-CW

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

DANNY RAY GILCREASE                          Plaintiff-Respondent

versus

MAXIMUS OPERATING, LTD.,                     Defendants-
ET AL                                        Respondents

* * * * *

On Application for Writs from the
Second Judicial District Court for the
Parish of Bienville, Louisiana
Trial Court No. 45,382

Honorable Charles Glenn Fallin, Judge

* * * * *

| | |
|---|---|
| FISHMAN HAYGOOD, LLP<br>By: Loretta Gallaher Mince<br>    Harvey Sylvanous Bartlett, III | Counsel for<br>Defendants-Applicants,<br>Gary Hunt, III, LLC;<br>Laskey-Davis Properties,<br>LLC; TMH Minerals,<br>LLC; Martha Hunt<br>Givhan, LLC; and<br>Elizabeth Hunt Wallace,<br>LLC |
| WILLIAM E. BYRAM LTD., APLC<br>By: William Edward Byram | Counsel for<br>Plaintiff-Respondent |
| C. GARY MITCHELL, APLC<br>By: Calton Mitchell | |

AYRES, SHELTON, WILLIAMS,
BENSON & PAINE, LLC
By: Lee H. Ayres

FLOWERS DAVIS, PLLC
By: John Charles Dalton Griffin

PETTIETTE, ARMAND, DUNKELMAN,          Counsel for
NELSON & HAMMONS, APLC                  Defendants-Respondents,
By: Donald James Armand  Jr.            Maximus Operating
    Joshua Phillip Monteleone           LTD, St Paul Fire &
                                        Marine Insurance
                                        Company and Key
                                        Exploration Ltd

COLVIN, SMITH, MCKAY & BAYS             Counsel for
By: James Henry Colvin, Jr.             Defendant-Respondent,
    Daniel N. Bays, Jr.                 Peterson Contractors Inc.

GALLOWAY JOHNSON,                       Counsel for
TOMPKINS, BURR & SMITH, PLC             Defendant-Respondent,
By: Timothy William Hassinger           Sewell Drilling, LLC
    Patrick Joseph Schepens
    Joshua Henry Dierker

KEAN MILLER, LLP                        Counsel for
By: Scott Louis Zimmer                  Defendant-Respondent,
                                        Stallion Oilfield Services
                                        LTD

COOK, YANCEY,                           Counsel for
KING & GALLOWAY, APLC                   Defendant-Respondent,
By: Brian Allen Homza                   Crum and Forster
    Jay Michael Lonero                  Indemnity Company
    Pamela Suzanne Gautier
    Angie A. Akers

LUGENBUHL, WHEATON,                     Counsel for
PECK, RANKIN & HUBBARD                  Defendants-Respondents,
By: Kristopher M. Redmann               Evanston Insurance
    Seth Andrew Schmeeckle              Company; Jewel
    Kevin Michael McGlone               Wayne Greer; and
                                        Wayne
                                        Greer, LLC

WATSON, BLANCHE,                        Counsel for
WILSON & POSNER, LLP                    Defendant-Respondent,
By: Chris James LeBlanc                 Bitco General Insurance
                                        Company

KEAN MILLER, LLP
By: Zoe Wilde Vermeulen

Counsel for
Defendant-Respondent,
MS Directional, LLC

MELCHIODE, MARKS,
KING, LLC
By: Kevin Andrew Marks
    James Jerauld Reeves, II

Counsel for
Defendant-Respondent,
New Park Drilling
Fluids, LLC

CHARLES TAUNTON
MELVILLE, LLC

Counsel for
Defendants-Respondents,
Jeffrey Scott Payton,
Michael Lewis Payton,
Lisa Carol Payton
Bennett, Julie Elizabeth
Payton Hill, Nelwyn E.
Thompson Wemple,
Don G. Thompson,
Jack V. Thompson and
Martha Colquitt
Whitehead

\* \* \* \* \*

Before STONE, THOMPSON, and HUNTER, JJ.

**HUNTER, J.**

The trial court denied a peremptory exception of prescription filed by defendants, Gary Hunt III, LLC, Elizabeth Hunt Wallace, LLC, Martha Hunt Givhan, LLC, TMH Minerals, LLC, and Laskey-Davis Properties, LLC. Defendants sought supervisory review of the ruling, and this Court granted defendants' writ application to review the correctness of the district court's ruling. For the following reasons, we conclude the judgment below does not require the exercise of this Court's supervisory authority. Accordingly, we recall the writ as improvidently granted, deny the writ application, and remand this matter for further proceedings.

### FACTS

Plaintiff, Danny Ray Gilcrease, is the owner of 88 acres of land in Bienville Parish. Plaintiff's property includes a residence and a five-acre spring-fed pond; the pond contains dam overflow capabilities and was stocked with game fish native to Louisiana. The property adjacent to plaintiff's tract is owned by Tanos Exploration II, LLC ("Tanos tract"). According to plaintiff, "an authorized representative of Tanos and/or a mineral lessee authorized the drilling of a natural gas well on the property."

On December 26, 2019, plaintiff filed a petition for damages against Maximus Operating, LTD, Sewell Drilling LLC, and Stallion Oilfield Services, LTD, claiming contamination of his property because of drilling operations on the Tanos tract. Plaintiff alleged that after the drilling operations took place December 13-29, 2018, he noticed a sheen on his pond on December 26, 2018, and he discovered numerous dead fish in the pond on January 1, 2019. According to plaintiff, he traced the source of the sheen to the well site. Specifically, plaintiff alleged that there was a breach of the

reserve pit on the well site which led to the contamination of his property and pond.

Plaintiff filed amended petitions on March 19, 2020, and on October 11, 2022. Thereafter, on December 4, 2023, plaintiff filed a third amended petition, adding as defendants the owners of mineral servitudes underlying his property, including Gary Hunt III, LLC, Elizabeth Hunt Wallace, LLC, Martha Hunt Givhan, LLC, TMH Minerals, LLC and Laskey-Davis Properties, LLC ("the Hunt Servitude Defendants") who are the applicants in this writ application. The third amended petition separated the various defendants into the "Tortfeasor Defendants," which now included Key Exploration, LTD and various insurers of the lessee and the operators, and the "Servitude Defendants," including the Hunt Servitude Defendants.

In the third amended petition, plaintiff alleged that his property was originally owned by George Kemp, who had executed a mineral lease, in favor of Lion Oil Refining Oil ("the Kemp lease"), and through various conveyances, Wildhorse Resources II, LLC became the lessee, and subsequently, Key became the lessee. However, according to plaintiff, the assignment from Wildhorse to Key, which was attached to the petition, transferred the mineral lease for the adjacent Tanos tract, not the Kemp lease on plaintiff's property. Plaintiff further alleged that Kemp conveyed all of his mineral interests in the property via four mineral servitudes, one of which is currently owned by the Hunt Servitude Defendants. Additionally, he alleged that Key was the mineral lessee of the Tanos tract, and Maximus was the operator of all of Key's mineral properties, including the Tanos tract. According to plaintiff, Maximus began drilling the well "on the Tanos

2

tract from an elevated well site location that was located partly on the Tanos tract and partly on the Gilcrease property."

In response to the third amended petition, the Hunt Servitude Defendants filed an exception of no cause of action on the basis that the third amended petition attached documents showing that the work performed by the operators was not under the Kemp lease that burdened the Hunt Servitude Defendants' mineral rights. Thereafter, plaintiff performed additional title research, and on August 16, 2024, he filed a fourth amended petition. In that petition, plaintiff removed the reference to the Wildhorse assignment in favor of a separate assignment from Samson Contour Energy E&P, LLC to Key for the Kemp lease on plaintiff's property. In the fourth petition, plaintiff alleged that the well pad covers his property and the Tanos tract, and that the well site, the well bore, and the reserve pit from which the contamination emanated are located primarily on plaintiff's property. More specifically, plaintiff alleged:

> The Tortfeasor Defendants and Servitude Defendants are liable unto Petitioner under La. C.C. arts. 667, 668, 669, and 2315 and [La. R.S. 31:11]. Additionally, the Servitude Defendants are liable to restore the surface of the Property to its original condition pursuant to [La. R.S. 31:22].
> ***
> Additionally, the Well was drilled on the Property which is subject to the [Kemp] Lease. The Servitude Defendants are the Lessor[s] of the Lease and Key is the lessee. The operations of Defendant Key on the Property are an exercise of its right to explore for minerals pursuant to the Lease which is an appendage of the Servitude Defendant[s'] right of ingress and egress on the Property to explore for minerals. Accordingly, Key and Maximus' operations on the Property are an exercise of the Servitude Defendants['] mineral servitude. As the owners of the mineral servitude covering the Property, the Servitude Defendants are "obligated, insofar as practicable, to restore the surface to its original condition at the earliest reasonable time."

3

On September 3, 2024, the Hunt Servitude Defendants filed an exception of prescription.[1]  The district court denied the exception of prescription without providing reasons.  The Hunt Servitude Defendants filed an application for supervisory review, and by order dated February 28, 2025, this Court granted the writ to docket.

## DISCUSSION

The Hunt Servitude Defendants contend the district court erred in denying the exception of prescription.  They argue that plaintiff did not add them as defendants until the third amended petition, which was filed almost five years after he noticed the damage to his property; therefore, prescription is evident on the face of the petition.  The Hunt Servitude Defendants also argue that the third amended petition does not relate back to the filing of the original petition, and plaintiff cannot establish that they received notice of the original petition or that they are not a wholly new or unrelated defendant, noting the distinct positions of a mineral servitude owner and a mineral lessee.

Contrarily, plaintiff contends his claims have not prescribed, and the Hunt Servitude Defendants and the Tortfeasor Defendants are both liable for the restoration and remediation of the property.  According to plaintiff, the Hunt Servitude Defendants are solidary obligors with the Tortfeasor Defendants, specifically including Key; therefore, the lawsuit filed against the Tortfeasor Defendants interrupted prescription against the Hunt

---

[1] The exception of no cause of action filed by the Hunt Servitude Defendants was denied. However, in the writ application, the Hunt Servitude Defendants only sought review of the denial of the exception of prescription.

4

Servitude Defendants. Further, plaintiff argues that prescription has not begun to run on the Hunt Servitude Defendants' restoration obligations under La. R.S. 31:22 because their servitude has not been terminated.

In response to plaintiff's argument, the Hunt Servitude Defendants maintain that plaintiff did not make any allegations tending to support his theory of solidary liability until he filed the fourth amended petition, in which he alleged, for the first time, that the Tortfeasor Defendants' operations were performed pursuant to the Kemp lease. The Hunt Servitude Defendants claim that without timely allegations that the Tortfeasor Defendants' conduct was on behalf of the servitude owners, and therefore was an exercise of the servitude, then there are no allegations on which to base an argument that solidary liability interrupts prescription. The Hunt Servitude Defendants further assert that it is unclear whether the liability between the Tortfeasor Defendants and the Servitude Defendants is solidary because the Servitude Defendants' obligation to restore the surface at the earliest reasonable time is not the same as the Tortfeasor Defendants' duty to act as reasonably prudent operators and correct contamination immediately. Further, the Hunt Servitude Defendants argue that plaintiff failed to provide any support for his allegation that claims against mineral servitude owners are imprescriptible as long as the servitude remains in place. They note that while the obligation to restore property continues as long as the servitude exists, a claim for breach of that obligation must be exercised at the earliest reasonable time.

A mineral lessee may be liable to damages in tort if it fails to exercise its rights with reasonable regard for those of others. *See*, La. C.C. art. 667;

5

La. R.S. 31:11; La. R.S. 31:22; La. R.S. 31:122.[2]  A mineral servitude

owner is liable to the surface owner for damages caused by its lessee's oil

and gas operations on the leased property.  *Dupree v. Oil, Gas & Other*

*Minerals*, 31,869 (La. App. 2 Cir. 5/5/99), 731 So. 2d 1067.

Claims arising under La. C.C. art. 667 and the Mineral Code are tort

claims.  *Lejeune Bros. v. Goodrich Petroleum Co.*, 06-1557 (La. App. 3 Cir.

11/28/07), 981 So. 2d 23, *writ denied*, 08-0298 (La. 4/4/08), 978 So. 2d 327;

*Ashby v. IMC Exploration Co.*, 496 So. 2d 1334 (La. App. 3 Cir. 1986).

---

[2] La. C.C. art. 667 provides, in relevant part:

> Although a proprietor may do with his estate whatever he pleases, still he cannot make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him. However, if the work he makes on his estate deprives his neighbor of enjoyment or causes damage to him, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known that his works would cause damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

La. R.S. 31:11(A) provides:

> The owner of land burdened by a mineral right or rights and the owner of a mineral right must exercise their respective rights with reasonable regard for those of the other. Similarly, the owners of separate mineral rights in the same land must exercise their respective rights with reasonable regard for the rights of other owners.

La. R.S. 31:22 provides:

> The owner of a mineral servitude is under no obligation to exercise it. If he does, he is entitled to use only so much of the land as is reasonably necessary to conduct his operations.  He is obligated, insofar as practicable, to restore the surface to its original condition at the earliest reasonable time.

La. R.S. 31:122 establishes the obligations of a mineral lessee as follows:

> A mineral lessee is not under a fiduciary obligation to his lessor, but he is bound to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor.  Parties may stipulate what shall constitute reasonably prudent conduct on the part of the lessee.

6

At the time of this claim, delictual actions were subject to a liberative prescription of one year.  This prescription commences to run from the day injury or damage is sustained.  La. C.C. art. 3492.

Ordinarily, the party pleading prescription bears the burden of proving that the claim has prescribed; however, when prescription is evident on the face of the pleadings, the burden shifts to the plaintiff to show that the action has not prescribed.  *Higgins v. Russell*, 55,624 (La. App. 2 Cir. 5/22/24), 386 So. 3d 1236.  When no evidence is submitted at the hearing on the exception, the exception of prescription must be decided upon the facts alleged in the petition with all of the allegations accepted as true.  In that case, the reviewing court simply assesses whether the trial court was legally correct in its finding.  *Mitchell v. Baton Rouge Orthopedic Clinic, L.L.C.*, 21-00061 (La. 10/10/21), 333 So. 3d 368.

When the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading.  La. C.C.P. art. 1153.  The purpose of La. C.C.P. art. 1153 is to allow amendment of pleadings despite technical prescriptive bars when the original pleading gives the parties fair notice of the general fact situation out of which the amended claim or defense arises.  While article 1153 does not specifically refer to parties, it does provide a means for determining when an amendment adding a plaintiff or defendant relates back to the date of an earlier filed pleading for prescriptive purposes.  *Bryant v. Tokio Marine HCC*, 54,771 (La. App. 2 Cir. 11/16/22), 351 So. 3d 837.  The doctrine of relation back of amended pleadings should be liberally

applied, particularly in the absence of prejudice. *Gamble v. Gamble*, 54,595 (La. App. 2 Cir. 1/18/23), 354 So. 3d 864.

An amendment adding or substituting a party relates back to a timely filed petition if: (1) the amended claim arises out of the same conduct, transaction, or occurrence set forth in the original petition; (2) the substitute defendant received notice of the institution of the action such that he will not be prejudiced in preparing and conducting his defense; (3) the substitute defendant knows or should know that but for a mistake concerning the identity of the proper party defendant, the action would have been brought against him; and (4) the substitute defendant is not a wholly new or unrelated defendant. *Ray v. Alexandria Mall, Through St. Paul Prop. & Liab. Ins.*, 434 So. 2d 1083 (La. 1983); *Allstate Ins. Co. v. Doyle Giddings, Inc.*, 40,496 (La. App. 2 Cir. 1/25/06), 920 So. 2d 404, *writ denied*, 06-0425 (La. 4/28/06), 927 So. 2d 294.

La. C.C.P. art. 1153 typically applies to determine if a supplemental petition relates back to the original in situations where the wrong party has been named as the original defendant, and not when additional solidary obligors are named. La. C.C.P. art. 1153 is inapplicable when a plaintiff has timely sued and correctly named at least one solidary obligor. *Etienne v. National Auto. Ins. Co.*, 99-2610 (La. 4/25/00), 759 So. 2d 51.

In the instant case, plaintiff alleged he "noticed a sheen on the pond on December 26, 2018," and he "discovered on January 1, 2019, that there were numerous dead fish in the pond." Plaintiff filed the original petition on December 26, 2019. However, the Hunt Servitude Defendants were not added as defendants until December 4, 2023, nearly five years after plaintiff discovered the damage to his property. Because the claims against the Hunt

8

Servitude Defendants are tort claims subject to a one-year prescriptive period, they are prescribed on the face of the petition. Thus, plaintiff has the burden of proving that his claims have not prescribed.

Prescription is interrupted by the commencement of suit against the obligor in a court of competent jurisdiction and venue. La. C.C. art. 3462. The interruption of prescription by suit against one solidary obligor is effective as to all solidary obligors. La. C.C. arts. 1799 and 3503. An obligation is solidary for the obligors when each obligor is liable for the whole performance. A performance rendered by one of the solidary obligors relieves the others of liability toward the obligee. La. C.C. art. 1794. An obligation may be solidary though it derives from a different source for each obligor. La. C.C. art. 1797.

In *Walton v. Burns*, 47,388 (La. App. 2 Cir. 1/16/13), 151 So. 3d 616, this Court explained the distinction between the duties of a mineral servitude owner and a mineral lessee as follows:

> Although their right is the same, the servitude owner has the duty to restore the surface to its original condition whereas the lessee has the duty to act in good faith and to develop and operate the property as a reasonably prudent operator. In [*Marin v. Exxon Mobil Corp.*, 09-2368 (La. 10/19/10), 48 So. 3d 234], the supreme court held that the "prudent operator standard" of Art. 122 incorporates the "duty to remediate oilfield contamination" if the lessee has operated "unreasonably or excessively." *Id.* at 37-38, 48 So. 3d at 259-260. The court called this the lessee's "additional restoration duty to correct the contamination," and explained that it "does not necessarily mean that the lessee has the duty to restore the land to pre-lease condition," which would be the servitude owner's duty under Art. 22. *Id.* This distinction, though perhaps subtle, reflects the reality that the lessee and mineral servitude owner are not totally in the same position. The court in *Marin* recognized that current contamination adversely affects the surface owner's present use of the land and is different from the ordinary wear and tear from ongoing use by a reasonably prudent operator.

9

We also note that a special statute, La. R.S. 30:29 (also known as "Act 312"), creates a special procedure to resolve claims of environmental damage arising from oilfield operations. Act 312 applies to actions under Title 31, the Mineral Code. *M.J. Farms Ltd. v. Exxon Mobil Corp.*, 07-2371 (La. 7/1/08), 998 So. 2d 16. Notably, § 29 C(1) provides that if the finder of fact determines that environmental damage exists and determines the party or parties who cause the damage, then the court shall order those parties "whom the court finds legally responsible for the damage" to develop a plan of remediation. Although the application of Act 312 is not an issue here, it underscores the fact that different defendants—lessees, operators, servitude owners—may have different obligations to evaluate and remedy contamination. The interests of justice are not served when a concerned party is excluded from the litigation.

[T]he remediation owed by all defendants might ultimately be the same[, but the servitude owners'] obligation to restore the surface at the earliest practicable time is not the same as the other defendants' duty to act as reasonably prudent operators, including a duty to correct contamination immediately, if the contamination is interfering with the plaintiffs' use of the surface.

In his concurring opinion in *Walton v. Burns*, *supra*, Judge Caraway explained that the mineral servitude owner and the mineral lessee have a coextensive obligation for the same restoration duty to the surface owner, making the solidary obligors.

Thus, the operators of the well are liable under general principles of tort; Key, as the mineral lessee, is liable under the Mineral Code to operate the property as a reasonably prudent operator, including a duty to remediate contamination; and the Hunt Servitude Defendants are liable under the Mineral Code to restore the surface to its original condition. Although these obligations are slightly different and arise under different sources, the remediation owed by the Hunt Servitude Defendants and the Tortfeasor Defendants might ultimately be the same.

We make no findings as to liability.  Nonetheless, applying the rationale set forth in *Walton v. Burns*, *supra*, the mineral servitude owner and the mineral lessees have coextensive obligations; therefore, they may be solidary obligors as alleged.  Consequently, if they are, in fact, solidarily liable, the timely claims against Maximus Operating, LTD, Sewell Drilling LLC, and Stallion Oilfield Services, LTD, interrupted prescription as to the Hunt Servitude Defendants.  Therefore, we recall the application for supervisory review as improvidently granted and deny the writ application.

## CONCLUSION

Based on the foregoing, the writ is recalled as improvidently granted, the writ application is denied, and the matter is remanded for further proceedings.  All costs are assessed to defendants, Gary Hunt III, LLC, Elizabeth Hunt Wallace, LLC, Martha Hunt Givhan, LLC, TMH Minerals, LLC, and Laskey-Davis Properties, LLC.

**WRIT RECALLED; WRIT APPLICATION DENIED; REMANDED FOR FURTHER PROCEEDINGS.**