# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                                                    NEWS RELEASE #006

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **26th day of January, 2024** are as follows:

**BY Griffin, J.:**

2023-CQ-00257       RANDALL KLING  VS.  TROY HEBERT; ERNEST P. LEGIER, JR., IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE OFFICE OF ALCOHOL AND TOBACCO CONTROL OF THE LOUISIANA DEPARTMENT OF REVENUE

*CERTIFIED QUESTION ANSWERED. SEE OPINION.*

Crichton, J., dissents and assigns reasons.
Crain, J., concurs and assigns reasons.
McCallum, J., additionally concurs for the reasons assigned by Justice Griffin.
Griffin, J., additionally concurs and assigns reasons.

RANDALL KLING

VS.

**TROY HEBERT; ERNEST P. LEGIER, JR., IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE OFFICE OF ALCOHOL AND TOBACCO CONTROL OF THE LOUISIANA DEPARTMENT OF REVENUE**

*On Certified Question from the United States Court of Appeals for the Fifth Circuit*

**GRIFFIN, J.**

Invoking Louisiana Supreme Court Rule XII,[1] the United States Court of Appeals for the Fifth Circuit ("United States Fifth Circuit") certified to this Court the following question: "In Louisiana, under what circumstances, if any, does the commencement of a suit in a court of competent jurisdiction and venue interrupt prescription as to causes of action, understood as legal claims rather than the facts giving rise to them, not asserted in that suit?" *Kling v. Hebert*, 60 F.4th 281, 288 (5th Cir. 2023). We answer the certified question as follows: Prescription is interrupted when notice is sufficient to fully apprise the defendant of the nature of the claim of the plaintiff, and what is demanded of the defendant.

---

[1] Louisiana Supreme Court Rule XII provides, in relevant part:

> When it appears to the Supreme Court of the United States, to any circuit court of appeal of the United States, or to any district court of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Louisiana for rendition of a judgment or opinion concerning such questions or propositions of Louisiana law. This court may, in its discretion, decline to answer the questions certified to it or reformulate the question certified.

## FACTS AND PROCEDURAL HISTORY

Certified questions are decided on the facts presented to us by the federal court. *See, e.g., Menard v. Targa Resources, L.L.C.*, 23-0246, p. 2 (La. 6/27/23), 366 So.3d 1238, 1240. Randall Kling filed suit in state court alleging his firing from the Licensing and Certification Division of the Louisiana Office of Alcohol and Tobacco Control ("ATC") was in retaliation for submitting written complaints describing workplace and ethics violations committed by then-Assistant Secretary of the ATC, Troy Hebert. Mr. Kling's state petition named the Louisiana Department of Revenue ("LDR"), which includes the ATC, as the sole defendant and asserted a single claim of violation of Louisiana's constitutional right to free expression. He did not allege any federal claims. A jury awarded him compensatory damages and lost wages, the latter of which was reversed on appeal. Mr. Kling's subsequent writ application to this Court on the issue of lost wages was denied. *Kling v. Louisiana Department of Revenue*, 18-1480 (La.App. 1 Cir. 7/18/19), *r'hg denied* (La.App. 1 Cir. 8/7/19), 281 So.3d 696, *writ denied*, 19-1434 (La. 11/5/19), 281 So.3d 671.

Prior to this Court's disposition of Mr. Kling's writ application, he filed a complaint in federal district court asserting substantially similar facts and sought declaratory relief, damages (including lost wages), and reinstatement for violations of his federal First and Fourteenth Amendment rights. Mr. Kling named then-Commissioner of the ATC, Juana-Marine Lombard, in her official capacity, and Troy Hebert, in his individual capacity, as defendants. Mr. Hebert filed a Rule 12(b)(6) motion to dismiss arguing Mr. Kling's 42 U.S.C. § 1983 claims, not pleaded in his state court suit, were prescribed.[2] The federal district court granted Mr.

---

[2] The prescriptive period for 42 U.S.C. § 1983 claims in Louisiana borrows from the one-year liberative prescriptive period for delictual actions set forth in La. C.C. art. 3492. *See SS v. State ex rel. Dept. of Social Services*, 02-0831, p. 7 (La. 12/4/02), 831 So.2d 926, 931.

2

Hebert's motion and dismissed Mr. Kling's federal suit against Mr. Hebert with prejudice. Mr. Kling appealed.

The United States Fifth Circuit, observing a lack of clarity in Louisiana jurisprudence, certified the foregoing question of law to this Court which we granted. *Kling v. Hebert*, 23-0257 (La. 4/18/23), 359 So.3d 499.

## **DISCUSSION**

The certified question asks whether there are any circumstances in which commencement of a suit interrupts prescription as to legal claims not asserted in that suit.[3] "Prescription is interrupted … when the oblige commences action against the obligor, in a court of competent jurisdiction and venue." La. C.C. art. 3462. Interruption of prescription continues as long as the suit is pending and runs anew from the last day of interruption. La. C.C. arts. 3463 and 3466.

Mr. Kling argues in favor of a broad interpretation wherein interruption is effective as to all causes arising out of the same operative facts identifying the same right/duty and the same violation of the legal theory pleaded irrespective of the source of the legal obligation.[4] Mr. Hebert advocates a narrower approach such that the actions in the two suits must be the same to provide notice to a defendant. We find a more balanced methodology is warranted.

The starting point for the interpretation of a statute is the language of the statute itself. *Menard*, 23-0246, p. 3, 366 So.3d at 1241. As noted by the United States Fifth Circuit, La. C.C. art. 3462 "is silent as to this particular aspect of interruption's scope." *Kling*, 60 F.4th at 287. We therefore turn to related provisions

---

[3] Although this court has the authority to reformulate the certified question, for the sake of comity with the federal court that posed the question, we choose not to utilize the dissent's approach to address the issue before us in the context of *res judicata*, which requires a completely different analysis.

[4] We decline to address Mr. Kling's arguments as to solidary obligors as it is beyond the scope of the certified question and was not addressed by the United States Fifth Circuit.

3

of the positive law to discern its meaning and context. *See Menard*, 23-0246, p. 4, 366 So.3d at 1242. "An obligation is a legal relationship whereby a person, called the obligor, is bound to render performance in favor of another, called the obligee." La. C.C. art. 1756. "A civil action is a demand for the enforcement of a legal right. It is commenced by the filing of a pleading presenting the demand to a court of competent jurisdiction." La. C.C.P. art. 421. Article 3462 may thus be rephrased as stating prescription is interrupted when the obligee files a pleading presenting the demand for the enforcement of a legal right/duty to a court of competent jurisdiction and venue, against the obligor.

The essence of interruption of prescription by suit is notice to the defendant of the legal proceedings based on the claim involved.[5] *Nini v. Sanford Bros., Inc.*, 276 So.2d 262, 264-65 (La. 1973). The underlying reason why prescription does not bar a subsequent claim is that a defendant has adequate and timely notice by legal demand that liability arising out of the factual occurrence pleaded is sought to be enforced against him. *Allstate Ins. Co. v. Theriot*, 376 So.2d 950, 954 (La. 1979); *see also* Tate, *Amendment of Pleadings in Louisiana*, 43 Tul. L. Rev. 211, 233 (1969) ("fundamental purpose of prescription statutes is only to afford a defendant security of mind and affairs if no claim is made timely, and to protect him from stale claims and from the loss or non-preservation of relevant proof"). Prescription is interrupted when a defendant knows or should know, prior to the expiration of the prescriptive

---

[5] As early as *Flower v. O'Connor*, 17 La. 213 (1841), this Court observed:

> It is clear from this doctrine of Pothier, that in order to determine the effect and extent of a legal interruption, we must enquire more particularly into the object and cause of the action, than the right of the plaintiff, the manner in which it is prosecuted and the competency of the court in which it is instituted; and endeavor to ascertain how far the knowledge of the titles on which the action is founded, has been brought home to the defendant by the judicial demand; and we do not hesitate to conclude that, if it be established that the defendant has been judicially notified of the titles which are the foundation of the demand for the whole of the property or of the debt, so as to acquire sufficient knowledge of the rights which are sought to be enforced against him by a suit, there results from said suit a legal interruption in favor of those to whom such rights may belong.

period, that legal demands are made upon him from the occurrence described in the petition. *Nini*, 276 So.2d at 264; *Parker v. Southern American Ins. Co.*, 590 So.2d 55, 56 (La. 1991). Notice is therefore sufficient when it fully apprises the defendant of the nature of the claim of the plaintiff, and what is demanded of the defendant. *See Theriot*, 376 So.2d at 953 (citing *Callendar v. Marks*, 185 La. 948, 952, 171 So. 86, 87 (1936)). "[I]f what is filed can be classified as a 'pleading presenting the demand,' prescription will be interrupted whether or not the original pleading sets forth a cause of action." *Batson v. Cherokee Beach and Campgrounds, Inc.*, 530 So.2d 1128, 1130 (La. 1988) (quoting La. C.C.P. art. 421); *Theriot*, 376 So.2d at 953; *Findley v. City of Baton Rouge*, 570 So.2d 1168, 1170 (La. 1990) ("[w]hile designed to protect a defendant against prejudice from lack of notification of a claim within the period of limitation, prescriptive statutes are not designed to protect a defendant against non-prejudicial pleading mistakes"); Tate, *supra*, at 233. This correctly places the emphasis on notice to the defendant, addressed on a case-by-case basis, rather than quixotic attempts at offering a precise definition of a cause of action. Examining the spectrum of jurisprudence is illustrative.

In *Theriot*, this Court found a prior suit by plaintiff's workers' compensation insurer against the defendant fully apprised the defendant that judicial claim was being made to enforce his liability for personal injuries to the plaintiff thus defendant received notice that plaintiff himself might intervene in the suit. 376 So.2d at 953-54. *Theriot* affirmatively cited to *National Sur. Corp. v. Standard Acc. Ins. Co.*, 247 La. 905, 918, 175 So.2d 263, 268 (1965), wherein this Court similarly found a prior negligence suit by the workers' compensation insurer of plaintiff's employer against defendant tortfeasors put the latter on notice of subsequent intervention by the plaintiff reasoning that "one principal cause of action resulting from a single tort

exists herein." Notwithstanding the problematic use of the phrase "cause of action"[6] in *National Sur. Corp.*, combined with *Theriot* it stands for the proposition that notice is sufficient to interrupt prescription where there is one underlying obligation owed by the same obligor to ostensibly the same obligee. *See Louviere v. Shell Oil Co.*, 440 So.2d 93, 95 (observing that because the compensation insurer has paid part of the employee plaintiff's damages, it is entitled to recover to the extent of those payments as partial subrogee).

In *Parker*, this Court found that a prior workers' compensation suit against an employer – despite ultimately being dismissed on an exception of no cause of action – gave sufficient notice to a defendant liability insurer in a subsequent tort suit observing there "is factual connexity and the parties are closely related." 590 So.2d at 56. The *Parker* Court reasoned both suits were based on the occurrence of the employee's death and the monetary liability of the employer. *Id.* (further observing a lack of prejudice in the liability insurer's ability to prepare and conduct a defense); *Findley*, 570 So.2d at 1171-72; Tate, *supra*, at 234. Thus, this Court implicitly found that in addition to the two suits being instituted by the same obligee, they dealt with the same underlying obligation and presented the same demand for monetary damages. *See Thompson v. Town of Jonesboro*, 16-1224, p. 6 (La.App. 1 Cir. 6/2/17), 222 So.3d 770, 774 (discussing *Parker*).

Conversely, in *Trahan v. Liberty Mut. Ins. Co.*, 314 So.2d 350, 354 (La. 1975), this Court found no interruption of prescription as the first suit gave defendant insurers no notice that plaintiffs were claiming damages resulting from the negligence of a co-plaintiff/employee – the first suit being based solely on the alleged negligence of six named executive officers. The Court additionally observed that "[a] cause of action in tort has no identity independent from the defendant upon

---

[6] *Theriot* applied the reasoning of *National Sur. Corp.* despite the fact the first suit in *Theriot* was dismissed for a failure to state a cause of action. 376 So.2d at 953-54.

6

whose fault it is based." *Id.*, 314 So.2d at 353. Thus, the obligation or duty owed in the first suit (relating to negligence from the executive officers) was distinct from the obligation in the second suit (relating to negligence from co-plaintiff/employee. *See also Thompson*, 16-1224, pp. 6-7, 222 So.3d at 774 (while first suit for mandamus notified defendant of a dispute concerning plaintiff's entitlement to office, it did not put defendant on notice of a possible claim for monetary damages); *Illes v. State ex. rel. Div. of Admin.*, 14-0689, p. 5 (La.App. 1 Cir. 12/23/14), 168 So.3d 646, 649 (observing a claim for loss of consortium is separate from any claim of the primary victim).

Mr. Kling's interpretation risks undermining the purpose of prescription statutes and invites the potential for abuse. *See* Tate, *supra*, at 233 ("a party's assertion of one claim or defense should not, by mere reason of the original filing, preserve indefinitely all other claims or defenses by him against his opponent"). "[I]t must not be overlooked that intended ill-pleading could sometimes be used to obtain the procedural advantage of delay desired by an ill-pleader." *Id.* at 240. A plaintiff's conscious choice or strategic decision to withhold potential claims to circumvent prescription statutes or avoid *res judicata* should not be countenanced. *See* La. C.C.P. art. 425 ("party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation"); Tate, *supra*, at 240 (observing ill-pleading could lead to "increased judicial traffic caused by unused trial days and further hearings so resulting [that] may prejudicially delay other litigants and may decrease the efficiency of the judicial system as a whole"). Mr. Hebert's interpretation risks penalizing pleading mistakes and inartful phraseology.[7]

---

[7] It is well-settled that *pro se* litigants are accorded greater leeway in the interpretation of their pleadings. *See State ex rel. Johnson v. Maggio*, 440 So.2d 1336, 1337 (La. 1983) (*pro se* petitioner "is not to be denied access to the courts for review of his case on the merits by the overzealous application of form and pleading requirements or hyper-technical interpretation of court rules"); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (*pro se* filings are held to "less stringent standards than formal pleadings by lawyers").

*See Theriot*, 376 So.2d at 954; *Parker*, 590 So.2d at 56 ("law strictly construes statutes of liberative prescription"). Framing the relevant inquiry around notice strikes a balance between these competing policy concerns.

## DECREE

We have answered the certified question as set forth in this opinion. Pursuant to Louisiana Supreme Court Rule XII, the judgment rendered by this Court upon the question certified shall be sent by the clerk of this Court under its seal to the United States Court of Appeals for the Fifth Circuit and to the parties.

**CERTIFIED QUESTION ANSWERED**

# SUPREME COURT OF LOUISIANA

## No. 2023-CQ-00257

## RANDALL KLING

## VS.

## TROY HEBERT; ERNEST P. LEGIER, JR., IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE OFFICE OF ALCOHOL AND TOBACCO CONTROL OF THE LOUISIANA DEPARTMENT OF REVENUE

On Certified Question from the United States Court of Appeals for the Fifth Circuit

**CRICHTON, J., dissents and assigns reasons:**

Louisiana Supreme Court Rule XII, Section 1, setting forth the provisions permitting this Court to certify questions from the Supreme Court of the United States, any circuit court of appeal or any district court of the United States, also allows this Court, in its discretion, to "reformulate the question certified." In my view, the circumstances giving rise to this certified question require such a reformulation.

The Fifth Circuit presented the following certified question: "In Louisiana, under what circumstances, if any, does the commencement of a suit in a court of competent jurisdiction and venue interrupt prescription as to causes of action, understood as legal claims rather than the facts giving rise to them, not asserted in that suit?" *Randall Kling v. Troy Hebert, et al.,* 60 F.4th 281, 288 (5th Cir. 2023). However, this Court need not reach the issue of prescription, as plaintiff's subsequent claim in federal court is barred by *res judicata* principles. Accordingly, I would reformulate the certified question as follows: "In Louisiana, can a party demand a judicial remedy which existed at the time of a prior judgment, arising out of the same facts, which he failed to assert in a prior suit which has now been

1

concluded by a final judgment that did not grant that remedy?" For the reasons that follow, that question would be answered in the negative.

Louisiana's primary *res judicata* principles are found in La. R.S. 13:4231, the current version of which was enacted in 1991. The statute provides:

> Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
> (1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
> (2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
> (3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.

The comments to the statute note that the 1990 revisions made a "substantial change in the law." The new statute broadened Louisiana *res judicata* principles and thus concomitantly narrowed the possibility for a party to re-litigate an issue already fairly and fully litigated by claiming he or she is asserting a "new" cause of action. "The central inquiry is not whether the second action is based on the same cause or cause of action (a concept which is difficult to define) but whether the second action asserts a cause of action which arises out of the transaction or occurrence which is the subject matter of the first action." La. R.S. 13:4231, Cmt. (a). *See also Terrebonne Fuel & Lube, Inc. v. Placid Refining Co.,* 95-654 (La. 1/16/96), 666 So. 2d 624, 632 (quoting same). The purpose of the amendments was clearly stated as promoting "judicial economy and fairness by requiring the plaintiff to seek all relief and to assert all rights which arise out of the same transaction or occurrence." La. R.S. 13:4231, Cmt. (a). *See, e.g., Lafreniere Park Foundation v. Broussard* 221 F.3d 804, 810 (5th Cir. 2000) (Dennis, J., writing for the court, finding La. R.S. 13:4231 "provides a broad application of res judicata to foster judicial efficiency and

2

protect litigants from duplicative litigation."). "Res judicata is a concept by which the defendant may defeat an action by declaring the claim extinguished because it has already been litigated." *Walton v. Burns*, 47,388, p. 9 (La. App. 2 Cir. 1/16/13), 151 So. 3d 616, 621, citing La. R.S. 13:4231.

Furthermore, La. R.S. 13:4231(2) provides that if a judgment is in favor of the defendant, then "all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action." In other words, "causes of action" or "claims" that existed based on the facts which were brought **or could have been brought** are barred. Notably, the statute does not state "causes of action **asserted**" in the first litigation, but rather **existing** based on the facts.

Relatedly, La. C.C.P. art. 425(A) states that "[a] party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." The 1990 comment to this article explains that "[t]his amendment expands the scope of this Article to reflect the changes made in the defense of res judicata and puts the parties on notice that all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation must be raised."[1,2]

---

[1] There is also an analogous provision in La. C.C.P. art. 5, which states that "[w]hen a plaintiff reduces his claim on a single cause of action to bring it within the jurisdiction of a court and judgment is rendered thereon, he remits the portion of his claim for which he did not pray for judgment, and is precluded thereafter from demanding it judicially."

[2] This Court recently addressed the relationship between La. R.S. 13:4231 and La. C.C.P. art. 425 in *Carlo Carollo, Jr., et al., v. State of Louisiana, DOTD*, 21-1670 (La. 9/9/22), 346 So. 3d 751. The Court's decision resolved a circuit split in Louisiana regarding whether La. C.C.P. art. 425 should be read *in pari materia* with La. R.S. 13:4231 or whether art. 425 should be an independent preclusion device. The Court examined the 1990 amendments to the *res judicata* principles, as discussed herein, and ultimately concluded that because the amendments broadened the scope of *res judicata*, it follows that art. 425 serves as a "rule for parties to follow during litigation; *i.e.*, as a warning or notice that all causes of action arising out of the same transaction or occurrence must be asserted in the same suit." *Id.* at 763. Thus, a majority of the Court found, art. 425 is not an independent preclusion provision, but rather is enforced through the exception of *res judicata*.

3

With these principles in mind, we turn to the reformulated question under the facts of this matter.

Plaintiff was terminated from his job in the Licensing and Certification Division of the Louisiana Alcohol and Tobacco Control ("ATC"), which is a division of the Louisiana Department of Revenue, on March 30, 2011. On May 26, 2011, he filed suit against the Louisiana Department of Revenue in the 19th Judicial District Court, asserting a claim of violation of Louisiana's constitutional right to free expression pursuant to Art. 1, § 7.[3] Following a jury trial, plaintiff was awarded compensatory damages and lost wages. Plaintiff filed a motion for new trial, seeking the additional remedy of reinstatement, but it was denied. The First Circuit Court of Appeal reversed the lost wages award but affirmed the general damages award. Plaintiff thereafter filed a writ application in this Court and prior to our dispensation of that matter, also filed suit in federal district court on October 3, 2019, asserting the same set of facts and seeking declaratory relief, damages (including lost wages), and reinstatement for alleged violations of his First and Fourteenth rights. In his federal court suit, plaintiff named the Commissioner of the ATC in her official capacity and the then-Assistant Secretary of the ATC (Troy Hebert) in his individual capacity. On November 5, 2019, approximately one month after plaintiff filed his federal court suit, this Court denied plaintiff's writ application. *Kling v. Louisiana Department of Revenue*, 19-1441 (La. 11/5/19), 281 So. 3d 671. The record makes clear that all of this litigation arises out of plaintiff's termination as "Captain in Charge" of the Licensing and Certification Division of the Louisiana Office of Alcohol and Tobacco Control.

Based on the language of La. R.S. 13:4231, this Court has established that each of the following five elements must be satisfied for a finding that a second

---

[3] Section 7 of Article I of the Louisiana Constitution provides that "[n]o law shall curtail or restrain the freedom of speech or of the press. Every person may speak, write, and publish his sentiments on any subject, but is responsible for abuse of that freedom."

4

action is precluded by res judicata: "(1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of final judgment in the first litigation; and (5) the cause or causes of action asserted in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation." *Chevron U.S.A., Inc. v. State,* 07-2469, p. 10 (La. 9/8/08), 993 So. 2d 187, 194, citing *Burguieres v. Pollingue,* 02-1385, p. 7 (La. 2/25/03), 843 So.2d 1049, 1053. There is no doubt that in this instance, the first two requirements of La. R.S. 13:4231, the existence of a valid and final judgment, are met. For purposes of *res judicata,* a valid judgment is one rendered by a court with jurisdiction over both the subject matter and the parties, disposing of the merits in whole or in part, after proper notice was given. *Burguieres,* 02-1385, 843 So. 2d at 1049, citing La. R.S. 13:4231 cmt. d (1990).[4] The court of appeal's judgment in this matter became final and definitive following this Court's denial of plaintiff's writ application on November 5, 2019, and therefore satisfies this requirement. *See* La. C.C.P. art 2166(E) ("When an application for certiorari to the supreme court is timely filed, a judgment of the court of appeal becomes final and definitive after a delay of five days, exclusive of legal holidays, commencing to run on the day after the clerk has mailed the denial by the supreme court of the application for certiorari.")

---

[4] Comment (d), "Valid and Final" provides:

> To have any preclusive effect a judgment must be valid, that is, it must have been rendered by a court with jurisdiction over subject matter and over parties, and proper notice must have been given. The judgment must also be a final judgment, that is, a judgment that disposes of the merits in whole or in part. The use of the phrase "final judgment" also means that the preclusive effect of a judgment attaches once a final judgment has been signed by the trial court and would bar any action filed thereafter unless the judgment is reversed on appeal. Having the res judicata effect of a judgment attach at the time of final judgment is rendered by the trial court is in accord with our present law on lis pendens, see Code of Civil Procedure Articles 531, 532.

5

The third requirement of *res judicata* under the statute is that the parties in both suits are "the same." This Court has stated that "[b]oth the civilian law and the common law mandate that there must be 'identity of parties' before the doctrine of *res judicata* can be used to preclude a subsequent suit. This requirement does not mean that the parties must have the same physical identity, but that the parties must appear in the same capacities in both suits." *Burguieres*, 843 at 1054. In other words, "[t]here exists an identity of parties whenever the same parties, their successors, or others appear so long as they share the same "quality" as parties." *Welch v. Crown Zellerbach Corp.*, 359 So. 2d 154, 156 (La. 1978). Thus, under this analysis, the defendants, including the agency and subdepartment that employed plaintiff, as well as the commissioners or secretaries of the ATC in their individual capacities all share the same "quality" as parties for purposes of *res judicata* and their interests are closely aligned.[5] *See Forum for Equality PAC v. McKeithen*, 04-2551 (La. 1/19/05), 893 So. 2d 738. Under the facts of this case, there is no amount of creative pleading or naming as defendants of different levels of plaintiff's employers or supervisors (either as agencies or in their individual capacities) that will defeat this requirement. To do so would allow an aggrieved plaintiff to merely file suit up and down the chain of command of employers in perpetuity. Such an abuse of the system is precisely what the principles outlined herein seek to avoid, and "[t]he interests of justice are not served when a concerned party is excluded from the litigation." *Walton v. Burns*, 47,388, p. 12 (La. App. 2 Cir. 1/16/13), 151 So. 3d 616, 622.

---

[5] There are exceptions to the *res judicata* principles as set forth in La. R.S. 13:4232. Although none are present in this matter, those exceptions are:

(1) When exceptional circumstances justify relief from the res judicata effect of the judgment;
(2) When the judgment dismissed the first action without prejudice; or,
(3) When the judgment reserved the right of the plaintiff to bring another action.

6

Regarding the fourth requirement that the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation, plaintiff's first suit set forth violations of his freedom of expression or speech under the Louisiana Constitution when he was allegedly fired in retaliation for submitting written complaints against Troy Hebert (the previous secretary of the ATC). For those alleged violations, he sought damages and reinstatement. In his federal court suit, plaintiff alleged the same facts, seeking declaratory relief, damages, and reinstatement for alleged violations of his First[6] and Fourteenth[7] Amendments. Given the duplicative nature of plaintiff's causes of action in both suits, I find this requirement has been met. Moreover, because the cause of action asserted in federal court also arose out of the same occurrence in the first suit (plaintiff's termination in alleged retaliation), the fifth requirement for *res judicata* is also met.

Accordingly, in my view, regardless of whether plaintiff's state court suit interrupted prescription on the federal court suit, plaintiff is now barred from seeking the same relief in federal court that he unsuccessfully sought in state court. Pursuant to La. R.S. 13:4231 and La. C.C.P. art. 425, plaintiff was required to raise **all** claims arising out of the same transaction or occurrence: his termination from employment as "Captain in Charge" of the Licensing and Certification Division of ATC. Because he failed to do so, under Louisiana *res judicata* principles, he cannot now seek relief in another court or jurisdiction.[8]

---

[6] The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances." U.S. Const. amend. I.

[7] Section 1 of the Fourteenth Amendment to the United States Constitution provides, in pertinent part, that no State shall "deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

[8] Importantly, an appellate court, such as the Fifth Circuit Court of Appeals in this instance, may recognize the exception of *res judicata* on its own motion pursuant to La. C.C.P. art. 927(A)(3).

Thus, as set forth herein, I would answer the reformulated question in the negative.

**RANDALL KLING**

**VS.**

**TROY HEBERT; ERNEST P. LEGIER, JR., IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE OFFICE OF ALCOHOL AND TOBACCO CONTROL OF THE LOUISIANA DEPARTMENT OF REVENUE**

On Certified Question from the United States Court of Appeals for the Fifth Circuit

**CRAIN, J.**, concurs with reasons.

I agree that interruption requires notice sufficient to fully apprise the defendant of the nature of the claim and what is demanded. However, I write to emphasize that the defendant is only on notice of those causes of action specifically alleged. Separate causes of action that are later brought are not interrupted by the initial suit because the defendant does not have notice from the petition.

A petition must contain "a short, clear, and concise statement of all *causes of action* arising out of . . . the transaction or occurrence that is the subject matter of the litigation" as well as "the material facts of[] the transaction or occurrence." La. Code of Civ. Proc. art. 891. (Emphasis added). Article 891 draws a distinction between material facts and causes of action arising from them. Both must be pled.

Louisiana Civil Code article 3462 provides that "[p]rescription is interrupted when the . . . obligee commences action against the obligor[] in a court of competent jurisdiction and venue." Addressing what is actually interrupted, La. Civ. Code art. 3462 cmt. (b) explains: "[t]he filing of suit in a court of competent jurisdiction and venue interrupts any kind of prescription as to the *causes of action* therein sued upon . . . ." (Emphasis added). Consequently, the express language of the statute requires that prescription continue to run against causes of action not pled.

1

While Article 3462 uses the word "action," and the comment uses "causes of action," neither of which are defined, a "civil action" is defined as "a demand for the enforcement of a legal right." La. Code Civ. Proc. art. 421. I discern no difference between the terms. Therefore, applying the definition of "civil action," prescription is only interrupted for specific claims pled, as those are demands made for the enforcement of a legal right.

Similarly, La. Code of Civ. Proc. art. 425, which addresses preclusion by judgment, requires a party to "assert all *causes of action* arising out of the transaction or occurrence that is the subject matter of the litigation." (Emphasis added). Again, a party must do more than allege material facts. They are required to allege all causes of action arising from those facts. Requiring the petition to articulate both the facts and, more specifically, *all* causes of action furthers the fundamental purpose of both prescription and res judicata, which is to offer a defendant finality. *See Giroir v. South Louisiana Medical Center*, 475 So.2d 1040, 1045 (La. 1985) (An important purpose of prescription is to provide a defendant psychological and economic security if no timely claim is made, and to protect a defendant from stale claims and loss of relevant proof.).

I concur.

SUPREME COURT OF LOUISIANA

No. 2023-CQ-00257

RANDALL KLING

VS.

TROY HEBERT; ERNEST P. LEGIER, JR., IN HIS OFFICIAL CAPACITY AS THE COMMISSIONER OF THE OFFICE OF ALCOHOL AND TOBACCO CONTROL OF THE LOUISIANA DEPARTMENT OF REVENUE

*On Certified Question from the United States Court of Appeals for the Fifth Circuit*

**GRIFFIN, J., additionally concurs and assigns reasons.**

Respectfully, it is unclear whether the "same parties" requirement of *res judicata* is met where a governmental entity is sued in one suit and an employee is sued under 42 U.S.C. § 1983 in his individual capacity in a second suit.[1] As observed by the United States Supreme Court:

> [I]t is clear that a suit against a government official in his or her personal capacity cannot lead to imposition of fee liability upon the governmental entity. A victory in a personal-capacity action is a victory against the individual defendant, rather than against the entity that employs him. Indeed, unless a distinct cause of action is asserted against the entity itself, the entity is not even a party to a personal-capacity lawsuit and has no opportunity to present a defense. That a plaintiff has prevailed against one party does not entitle him to fees from another party, let alone from a nonparty.

*Kentucky v. Graham*, 473 U.S. 159, 167-68, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114.

I would therefore leave it to the federal courts to determine the applicability of *res judicata* under the facts presented. The irony is Mr. Kling's contention that his initial suit against the LDR constitutes notice to Mr. Hebert for liability in his individual capacity simultaneously supports the dissent's position that the party defendants are the same thus triggering *res judicata*.

---

[1] Notwithstanding my position on the applicability of *res judicata*, I stand by the concerns over the potential for abuse as articulated in the opinion of the Court.